AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

**LODGED**
CLERK, U.S. DISTRICT COURT
11/17/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____KM_____ DEPTUTY

**FILED**
CLERK, U.S. DISTRICT COURT
11/17/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____GR_____ DEPUTY

United States of America

v.

FRANKY VELASQUEZ,

Defendant.

Case No.  2:25-MJ-07167-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of August 19, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Brandon Purece, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    November 17, 2025

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Karen L. Stevenson, Chief U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Brandon Purece, being duly sworn, declare and state as follows:

## I.  PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint and arrest warrant against FRANKY VELASQUEZ, ("VELASQUEZ") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

2.   The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF AFFIANT

3.   I am employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, as a Task Force Officer ("TFO").  I have been employed in this capacity for approximately three years.  I am also a Police Officer with Los Angeles Police Department ("LAPD") and have been employed in this capacity for approximately 29 years. I am currently assigned to LAPD's Metropolitan Division Crime Impact Team, ATF Task Force, Los Angeles Field Division.  Within

ii

this Task Force, I am charged with investigating violations of federal and local firearms laws and regulations in addition to investigating violent crime, locating and apprehending suspects in violation of these laws, and utilizing proactive methods to reduce the incidence of violent crime.  I regularly refer to these laws and regulations during the course of my official duties.   I am a graduate of the Los Angeles Police Academy and have completed specialized training while employed as a Police Officer and Task Force Officer.  Prior to my assignment within this task force, I worked numerous assignments to include, Patrol Officer, Gang Enforcement Officer in multiple geographic divisions, Task Force Officer with the Federal Bureau of Investigation and Metropolitan Division Officer.  During my employment with the LAPD and ATF, I have participated in numerous investigations involving individuals illegally possessing and/or trafficking firearms.  Furthermore, I have participated in investigations involving criminal street gangs engaged in the aforementioned criminal activities.

### III.  <u>SUMMARY OF PROBABLE CAUSE</u>

4.  On June 16, 2025, a shooting occurred at Central Avenue and Century Boulevard in Los Angeles, CA.  One male, United States Postal Service Worker, as struck by a stray bullet.  An arrest warrant was obtained for Franky VELASQUEZ.  On August 19, 2025, other members of the Metropolitan Division, Crime Impact Team, and I located VELASQEUZ at a motel.  A search warrant was obtained for the motel room and LAPD served the warrant and took VELASQUEZ into custody.  During the search of

the motel room, a loaded firearm was recovered.  VELASQUEZ has three felony convictions in California.

## IV. <u>**STATEMENT OF PROBABLE CAUSE**</u>

5.    Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A.    **June 16, 2025, Shooting**

6.    On June 16, 2025, LAPD, patrol officers responded to a radio call of an ambulance shooting.  Through their investigation, the responding officers were able to determine that the shooting had occurred at the intersection of Central Avenue and Century Boulevard.  The responding officers located a United States Postal Worker who was struck by gunfire but could not provide the officers much information. Other officers located a witness whose Tesla security cameras recorded the incident.  A review of the video showed four Hispanic men pull up in a white Lexus 2-door sedan. The four exited the vehicle. One of them began to spray paint "Florencia 13" gang graffiti on an adjacent wall.  As one suspect spray-painted graffiti, the other three appeared to act as lookouts.  As this was occurring, a suspected rival gang member passed by and saw the group "tagging" on the wall.  That suspected rival gang member pulled out a pistol while one of the men from the white Lexus pulled out a pistol and the two engaged in a shootout.  A United States Postal Services worker was walking nearby and was struck by a stray round.  No other people were hit.  The four men re-entered

4

their vehicle and fled.  The suspected rival gang member fled on foot.

7.    LAPD Officer Mitchell Woods investigated the incident. He reviewed the surveillance video which captured the shooting and noticed that one of the four men from the white Lexus had a GPS monitor affixed to his ankle.  Officer Woods utilized the California Department of Corrections and Rehabilitation website which assists law enforcement with tracking parolees who have ankle monitors affixed to them.  Officer Woods searched and found that one parolee, named Ismael MOSQUEDA, had an ankle monitor and was at or near the scene of the shooting.  Officer Woods located photographs of MOSQUEDA and compared it to the surveillance video footage of the male with the GPS ankle monitor and determined it to be the same person.

8.    Officer Woods's investigation found that MOSQUEDA is a Florencia 13 gang member.  Officer Woods also discovered the screen name for MOSQUEDA's Instagram account and obtained a state search warrant for it.  Later, after the warrant was served on Meta Platforms, Inc., Officer Woods received the items requested by the warrant.  In reviewing the items, Officer Woods located communications between MOSQUEDA and other Florencia 13 gang members, some of which discussed the shooting.  Officer Woods authored and obtained another state search warrant for the Instagram accounts of five other individuals.  Officer Woods served the warrant and later reviewed the data returned by Meta Platforms, Inc.  In reviewing the data, he found one Instagram

5

account discussed the shooting and was associated with Florencia 13 gang member, Kevin FERNANDEZ.

9. Officer Woods discovered though the combined Instagram data that FERNANDEZ and MOSQUEDA had direct message conversations before and after the shooting and discussed the shooting with two additional Instagram accounts. Officer Woods authored and obtained yet another state search warrant for these additional accounts. The warrant was served on Meta Platforms, Inc. and the requested data was returned to Officer Woods. From the information, Officer Woods was able to identify the two additional Instagram accounts as belonging to Florencia 13 gang members David FLORES and FRANKY VELASQUEZ. From all the Instagram records, Officer Woods was able to obtain current cell phone numbers for FERNANDEZ, FLORES and VELASQUEZ. Also contained in the Instagram data was a video that was sent to FLORES which showed him vandalizing a wall with Florencia 13 gang graffiti two days prior to the shooting. In the same video was a man, later identified as VELASQUEZ brandishing a Smith and Wesson, M&P Shield, 9mm pistol.

10. Officer Woods wrote and obtained state search warrants to obtain the call detail records and cell phone location data for FERNANDEZ, FLORES and VELASQUEZ. After obtaining the requested information, Officer Woods found that FERNANDEZ, FLORES and VELASQUEZ were all in the vicinity of the shooting at the date and time of occurrence.

11. Based on the totality of his investigation, law enforcement obtained arrest warrants for VELASQUEZ, FERNANDEZ,

6

FLORES and MOSQUEDA; search warrants for the residences of FLORES and FERNANDEZ; and cell phone "ping" warrants for VELASQUEZ, FLORES, FERNANDEZ, and MOSQUEDA.

12.  On August 19, 2025, Officer Woods coordinated a search and arrest operation to take VELASQUEZ, FERNANDEZ, and MOSQUEDA into custody.  FLORES was found to already be in custody for an unrelated crime, FERNANDEZ was located at his home and arrested, and MOSQUEDA was found to be staying at and was arrested at a motel.

13.  Based on cell phone "pings," VELASQUEZ was believed to be staying at the Days Inn, 901 West Manchester Boulevard, Inglewood.  LAPD conducted surveillance at the motel and located a white Infiniti with temporary paper plates consistent with a vehicle VELASQUEZ was known to drive.  Officers contacted the motel manager and found VELASQUEZ to be staying in room 122 and the room rented to him.  The information was passed on to Officer Woods who obtained a state search warrant for the motel room.  LAPD officers were then directed to VELASQUEZ's room. The room was surrounded, and VELASQUEZ was ordered out.  He exited the room as directed and was taken into custody without incident.  VELASQUEZ's girlfriend, identified as Mercedes YANEZ, was also located in the room and detained without incident.  In addition, a key fob belonging to the white Infiniti, located in the motel parking lot, was recovered from YANEZ.  YANEZ indicated the key was VELASQUEZ's and belonged to VELASQUEZ's white Infiniti.  The vehicle was determined to be a stolen vehicle with a fraudulent temporary paper plate.

7

**B.    Search of Days Inn, 901 West Manchester Boulevard, Room 122, Inglewood, CA**

14.    After VELASQUEZ was taken into custody, Officer Woods conducted a physical search of the motel room for evidence. During the search, Officer Woods located and recovered a loaded Smith & Wesson, model M&P 9 Shield, 9mm caliber semi-automatic pistol, bearing serial number JMF2099.  The pistol had a seated magazine and was loaded with 17 live, 9mm rounds.  On the desk of the motel room, there were several Polaroid photographs of VELASQUEZ.  At least one of the photographs was of VELASQUEZ brandishing the pistol.

**C.    VELASQUEZ's Statements**

15.    After being arrested, VELASQUEZ was transported to LAPD Southeast Division where he was interviewed by Officer Woods and Detective Jose Carias.  VELASQUEZ was advised of his Miranda rights which he waived and agreed to speak with the investigators.  During the interview, VELASQUEZ admitted to being at the scene of the shooting and getting shot at but denied shooting.  He also admitted the pistol recovered in his motel room was his and he had possessed it for approximately one month.  The interview with VELASQUEZ was audio and video recorded.

**D.    VELASQUEZ's Criminal History**

16. On November 11, 2025, I reviewed certified conviction documents for VELASQUEZ and learned that je has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

8

a.    On or about February 22, 2023, a violation of California Penal Code section 30605(A), Possession of an Assault Weapon, in the Superior Court for the State of California, County of Los Angeles, Case Number BA502210;

b.    On or about October 24, 2023, a violation of California Penal Code section 29800(a)(1), Felon in Possession of a Firearm, in the Superior Court for the State of California, County of Los Angeles, Case Number BA514745; and

c.    On or about November 21, 2023, a violation of California Penal Code section 496, Receiving Stolen Property, in the Superior Court for the State of California, County of Los Angeles, Case Number VA161282.

**E.    Interstate Nexus**

16.    On November 7, 2025, an ATF Interstate Nexus Expert examined the handgun and ammunition and confirmed that all the items were manufactured outside of the State of California. Specifically:

a.    The Smith & Wesson, model M&P 9 Shield, 9mm caliber semi-automatic pistol, bearing serial number JMF2099, was manufactured in Massachusetts.

b.    The one round of Federal Cartridge ("FC"), 9mm Luger caliber ammunition, marked with the headstamp "FC 9mm LUGER", was manufactured in Minnesota or Wisconsin.

c.    The two rounds of Blazer, 9mm Luger caliber ammunition, marked with the headstamp "BLAZER 9mm LUGER", were manufactured in Idaho.

9

d.    The one round of Winchester, 9mm Luger caliber ammunition, marked with the headstamp "WIN 20 9mm LUGER", was manufactured in Illinois or Mississippi.

e.    The nine rounds of Winchester Military Ammunition ("WMA"), 9mm caliber ammunition, marked with the headstamp "WMA 21", were manufactured in Illinois or Mississippi.

f.    The two rounds of Precision Made Cartridges ("PMC"), 9mm Luger caliber ammunition, marked with the headstamp "PMC 9mm LUGER", were manufactured in South Korea.

g.    The one round of Hornady, 9mm Luger caliber ammunition, marked with the headstamp "HORNADY 9mm LUGER", was manufactured in Nebraska.

h.    The one round of Remington Peters ("RP"), 9mm Luger caliber ammunition, marked with the headstamp "RP 9mm LUGER", was manufactured in Arkansas.

17.    Because the handgun and ammunition were found in California, I believe that they have traveled in and affected interstate commerce.

//

//

//

10

## V.    CONCLUSION

17. For all of the reasons described above, there is probable cause to believe that FRANKY VELASQUEZ has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 17th day of
November, 2025.

_Karen L. Stevenson_
UNITED STATES MAGISTRATE JUDGE

11